UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GAYLE M. ARCHAMBAULT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| KINDRED REHAB SERVICES, INC. | * | No. 14-cv-11675-ADB |
| D/B/A REHABCARE; KINDRED | * | |
| HEALTHCARE INC.; JENNIFER | * | |
| MORRISON; PATRICIA CINCOTTA; | * | |
| STEPHEN HAGGERTY; and STEPHEN | * | |
| ESDALE, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

August 31, 2016

BURROUGHS, D.J.

Plaintiff Gayle M. Archambault brings this action against her former employer, Kindred

Rehab Services, Inc. ("Kindred") and four individuals who served in supervisory roles during her

employment at Kindred. Archambault alleges that the defendants terminated her employment in

retaliation for her use of medical leave protected under the Family Medical Leave Act, 29 U.S.C.

§ 2601, *et seq.* ("FMLA") (Count I). She further asserts that her termination constituted

discrimination in violation of both the Americans with Disabilities Act, 42 U.S.C. § 12101 *et*

*seq.* ("ADA") (Count II), and the Massachusetts Fair Employment Act, Mass. Gen. L. Ch. 151B

("Chapter 151B") (Count III). Finally, Archambault brings a count against the individual

defendants for intentional infliction of emotional distress (Count V).[1] Presently before the Court

---

[1] The Plaintiff initially brought a claim for age discrimination, which has since been withdrawn.
[ECF No. 34 at 2]. The Complaint also originally named Kindred Healthcare, Inc. as a defendant,

is the defendants' motion for summary judgment. [ECF No. 34]. For the reasons set forth herein, the Motion is <u>GRANTED</u> in its entirety and the Complaint is dismissed.

## I.      BACKGROUND

### a.      Procedural History

Archambault filed her complaint in this action on April 4, 2014. [ECF No. 1 ("Compl.")]. Defendants jointly answered on August 14, 2014 [ECF No. 12], and the parties conducted discovery through August 21, 2015. [ECF No. 25]. The defendants then filed a motion for summary judgment, as well as a memorandum of law in support and a statement of undisputed facts, on December 14, 2015. [ECF Nos. 34-36]. Archambault filed her memorandum in opposition on February 11, 2016, as well as objections to defendants' statement of undisputed facts and a statement of disputed facts. [ECF Nos. 47, 48]. The defendants replied on March 10, 2016 [ECF No. 53], and the Court heard oral argument on the motion for summary judgment on March 31, 2016.

On April 5, 2016, Archambault filed a motion for leave to submit additional evidence in opposition to the pending summary judgment motion. [ECF No. 55]. She requested leave to submit the testimony of Suzanne Houlihan, Archambault's supervisor from January 2008 to December 2010, via affidavit or deposition. On June 8, 2016, the Court granted that motion [ECF No. 60], and the parties have since deposed Houlihan and filed supplemental briefs regarding her testimony. [ECF Nos. 65, 66].

---

but Plaintiff has stated that she intends to dismiss the Complaint as against Kindred Healthcare, Inc. [ECF No. 35 at 3].

###### b. Factual Background

Here, the Court reviews the facts in the light most favorable to the plaintiff, who opposes summary judgment. Crete v. City of Lowell, 418 F.3d 54, 56 (1st Cir. 2005).

Defendant Kindred is a corporation that provides rehabilitation services to nursing homes. Compl. ¶ 2. Archambault is a speech pathologist who worked for Kindred from November 13, 2006 to January 23, 2013. Id. ¶¶ 1, 9. Archambault provided speech pathology services to elderly residents at the Newton Wellesley Center for Alzheimer's Care ("NWCAC"), one of Kindred's nursing home clients. Id. ¶¶ 2-4, 9. Kindred or its corporate affiliates also employed the individual co-defendants in this action. Id. ¶¶ 5-8. Defendant Jennifer Morrison was an Area Rehab Director for Kindred, and was responsible for supervising Kindred's Rehab Managers, including the plaintiff's last two immediate supervisors, Defendants Patricia Cincotta and Stephen Haggerty. [ECF No. 36 ("Def. Facts") ¶ 3]. Cincotta worked primarily at another facility but occasionally filled in at NWCAC, where she acted as Archambault's interim supervisor until the spring of 2011. Id. ¶¶ 4, 13. Haggerty served as Archambault's immediate supervisor at NWCAC from March 2011 until Archambault's termination in January 2013. Id., ¶¶ 5, 13. Finally, Defendant Stephen Esdale was the Executive Director of the NWCAC facility, as of May 6, 2011. Id. ¶ 6.

Starting in 2008, Archambault reported that she was experiencing negative allergic reactions to the cleaning fluids being used at the NWCAC facility. [ECF No. 48 ("Plaintiff's Facts") ¶ 3; Def. Facts ¶ 8]. In December 2009, as a result of these ongoing allergic reactions, she filed a request to take intermittent medical leave under the FMLA. Plaintiff Facts ¶ 8; Def. Facts ¶ 9. Kindred approved her request. [ECF No. 48-14 at 29; Def. Facts ¶ 9]. Thereafter, Archambault applied on an annual basis to renew her FMLA eligibility rights, and each time,

Kindred approved her renewal requests. Def. Facts ¶ 9. Archambault took intermittent FMLA leave over the course of her employment at Kindred. Id. ¶ 15.

Archambault alleges that starting in 2009, she was "subjected to extreme scrutiny, unjust disciplinary actions, harassment, retaliation and discrimination largely orchestrated by Defendant, Jennifer Morrison who had complained to Plaintiff that her taking of intermittent Family Medical Leave was inconvenient for the facility." Compl. ¶ 15. Her Complaint details a series of incidents, culminating in her suspension and termination, which Archambault claims were retaliation for taking FMLA leave and/or discrimination based on her disability. Id. ¶¶ 15-25.

Kindred suspended Archambault on November 8, 2012, based upon concerns that she was engaging in improper billing practices and that she was providing treatment for patients who did not have an ongoing need for the treatment. Def. Facts ¶¶ 25-26; Plaintiff Facts ¶ 22. At the time Archambault was suspended, Morrison reported concerns about Archambault's conduct to Kindred's compliance hotline. Def. Facts ¶ 26. On January 23, 2013, with the investigation ongoing, Kindred informed Archambault by letter that her employment had been terminated due to "an egregious violation of [Kindred's] Documentation Protocol" that had been uncovered over the course of the investigation. [ECF No. 48-14 at 47-48 (Ex. 22)]. The investigation revealed that Archambault had billed for over 40 sessions with 13 patients without completing the appropriate progress notes. The letter, signed by Morrison, stated in relevant part:

> While our investigation is ongoing in certain areas, we have made the decision to terminate your employment with [Kindred] effective immediately based on our findings to date. Of particular concern is the number [of] therapy records that you failed to document to support the services you reportedly provided. The investigation revealed several instances where you billed time for therapy sessions for which there was no corresponding clinical note to support the time entry. In the five weeks leading up to your suspension alone, you billed for over 40 therapy sessions

with 13 patients for which you failed to complete appropriate progress notes. The magnitude of your failure to properly and timely complete clinical documentation is an egregious violation of [Kindred] Documentation Protocol. Moreover, a review of the clinical records for your patients revealed that the duration of services rendered in many cases was not adequately supported or documented. Specifically, in many instances there was no noted progress throughout your treatment and/or no specific treatment techniques or strategies suggested by you for improvement. All of this has led to the conclusion that you did not exercise proper discretion and judgment in carrying out your responsibilities.

Id.

Plaintiff claims that she had an exemplary record of completing clinical notes in a timely manner, that she had completed the missing documentation prior to being suspended, and that Kindred suspended and terminated her employment as retaliation for taking FMLA leave.

## II.        LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at

5

trial.'" <u>Ocasio-Hernández v. Fortuño-Burset</u>, 777 F.3d 1, 4-5 (1st Cir. 2015) (quoting <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000)).

Conversely, "to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." <u>ATC Realty, LLC v. Town of Kingston, N.H.</u>, 303 F.3d 91, 94 (1st Cir. 2002) (internal quotations and citation omitted). That is, the non-moving party must set forth specific, material facts showing that there is a genuine disagreement as to some material fact. <u>One Parcel of Real Prop.</u>, 960 F.2d at 204 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Cochran</u>, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." <u>Hannon v. Beard</u>, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," <u>Gomez v. Stop & Shop Supermarket Co.</u>, 670 F.3d 395, 396-97 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation." <u>Cochran</u>, 328 F.3d at 6 (quoting <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990)).

## III.   DISCUSSION

Retaliation and discrimination claims under the FMLA, ADA, and Chapter 151B are analyzed under the same three-step burden-shifting framework used in Title VII employment discrimination actions, as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Ameen v. Amphenol Printed Circuits, Inc.</u>, 777 F.3d 63, 69 (1st Cir. 2015) (noting that

courts employ the <u>McDonnell Douglas</u> framework to evaluate FMLA retaliation claims);

<u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 264 (1st Cir. 1999) (approving use of

<u>McDonnell Douglas</u> framework in connection with ADA claims); <u>Tobin v. Liberty Mut. Ins. Co.</u>,

433 F.3d 100, 104 (1st Cir. 2005) (extending use of <u>McDonnell Douglas</u> framework to

discrimination claims under Chapter 151B).

Step one in the <u>McDonnell Douglas</u> framework requires that the plaintiff establish a

*prima facie* case of either retaliation or discrimination under the relevant statute. <u>McDonnell</u>

<u>Douglas</u>, 411 U.S. at 802. For instance, to establish a *prima facie* showing of retaliation under

the FMLA, the "plaintiff must show 'that (1) he availed himself of a protected right under the

FMLA; (2) he was adversely affected by an employment decision; (3) there is a causal

connection between the employee's protected activities and the employer's adverse employment

action.'" <u>Sampson v. Arbour-Fuller Hosp.</u>, No. 11-cv-10487, 2012 WL 5386099, at *8 (D. Mass.

Nov. 2, 2012) (quoting <u>Hodgens v. Gen. Dynamics Corp.</u>, 144 F.3d 151, 161 (1st Cir. 1998)).

In step two, the burden shifts to the defendant to demonstrate a legitimate, nonretaliatory

and nondiscriminatory reason for the adverse employment decision. <u>McDonnell Douglas</u>, 411

U.S. at 802-03. To satisfy step two, the defendant must "clearly set forth, through the

introduction of admissible evidence, the reasons for the [employee's termination]." <u>Hodgens</u>,

144 F.3d at 160-61. "The explanation provided must be legally sufficient to justify a judgment

for the [employer]." <u>Id.</u> If the defendant demonstrates a legitimate reason for its adverse action,

"the presumption of discrimination drops from the case" and the burden shifts back to the

plaintiff. <u>Id.</u> at 161.

At step three, the plaintiff must demonstrate that the legitimate reason put forth by the

employer for the adverse employment action is a mere "pretext for retaliating against [her]."

Ameen, 777 F.3d at 69 (quoting Hodgens, 144 F.3d at 160-61). To meet the requirements of step three and withstand summary judgment, "the plaintiff need not prove retaliation by a preponderance of the evidence," but rather need only "raise a genuine issue of fact as to whether [retaliation] motivated the adverse employment action." Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015) (quoting Collazo v. Bristol–Myers Squibb Mfg., Inc., 617 F.3d 39, 50 (1st Cir. 2010)).

### a.    Count I: Family Medical Leave Act

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA's proscription against "interference" is understood to "prohibit[] an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c); see also Hodgens, 144 F.3d at 159-60. However, "while an employee may not be penalized for exercising her rights under the statute, an employee may nevertheless be discharged, not promoted, or denied benefits for independent reasons during or after her taking of FMLA leave." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 719 (1st Cir. 2014) (citing Henry v. United Bank, 686 F.3d 50, 55 (1st Cir. 2012)). Therefore, in an FMLA retaliation case, "the employer's intent—*i.e., why* the employer fired or acted against the employee—matters." Id. (citing Hodgens, 144 F.3d at 160) (emphasis in original). "The critical issue . . . specifically [is] 'whether the employer took the adverse action because of a prohibited reason or for a legitimate non-discriminatory reason." Chase v. United States Postal Serv., No. CV 12-11182-DPW, 2016 WL 829889, at *9 (D. Mass. Mar. 1, 2016) (citing Hodgens, 144 F.3d at 160).

The defendants have conceded that Archambault met her initial burden of proving a *prima facie* case of FMLA retaliation. [ECF No. 35 at 5]. Furthermore, the defendants have met their burden of articulating legitimate, nonretaliatory reasons for suspending and terminating Archambault. Kindred suspended Archambault amid concerns that she was billing inaccurately and providing unjustified treatment. [ECF No. 48-5 at 67:9-17]. It terminated her employment after an internal investigation revealed that she had billed for over 40 therapy sessions without completing the required documentation and that she had been providing services to residents for a longer period of time than was justified by her notes. [ECF No. 48-14 at 47-48 (Ex. 22)]. Archambault admitted that she was a month behind on her patient documentation prior to her suspension [ECF No. 48-10 at 141:3-17; ECF No. 48-13 at 108:5-8], and that this was a violation of Kindred's policy. [ECF No. 48-13 at 109:3-10]. While Archambault claims that she brought the missing documentation with her to the meeting at which she was suspended, she did not mention this to anyone at the meeting. Id. 97:9-18.

Because Kindred has satisfied step two—demonstrating a legitimate, nondiscriminatory reason for its actions—the question on summary judgment is whether Archambault has presented sufficient evidence that Kindred's stated reasons for suspending and ultimately terminating her were a pretext for retaliatory animus. "The critical inquiry becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991). In order to establish pretext, Archambault must "show more than that the defendants' asserted reason for taking adverse action against [her] was not the real reason . . . [she] must show that the reason given was a cover for retaliation . . . ." Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 32 (1st Cir. 2015). Having reviewed the summary judgment record, the Court finds that Archambault has not made out a jury question on

pretext; even reviewing the facts in the light most beneficial to Archambault, there is no evidence that her termination or suspension was motivated by retaliatory animus. "Throughout, [Archambault] has failed to produce evidence of the sort commonly used to show pretext. There is no statement of any decisionmaker evidencing retaliatory motive. And there is no evidence that comparably situated employees . . . were not fired." Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325 (1st Cir. 2005).

First, Archambault offers no "contemporaneous statements made by the decisionmakers suggesting retaliation for her requesting and taking leave." Henry, 686 F.3d at 58; see also Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 15 (1st Cir. 2012) ("To defeat summary judgment in a retaliation case, a plaintiff must point to *some* evidence of retaliation by a pertinent decisionmaker.") (emphasis in original) (internal quotations omitted). Archambault testified that Morrison, who initiated the suspension and signed the termination letter, never spoke to her about her use of FMLA leave and that she did not recall Morrison ever making any comments indicating that she was upset or felt inconvenienced by her medical condition. [ECF No. 48-10 at 24:22-25:2; 48-13 at 47:22-24, 131:22-132:5].[2] Furthermore, she has not alleged that Haggerty or Esdale, who alerted Morrison to the concerns that led to Archambault's suspension and termination, ever made negative remarks relating to her FMLA leave.[3] Esdale, who worked for the facility and not Kindred, was unaware that Archambault took

---

[2] That Archambault's 2011 FMLA renewal request was delayed, but ultimately allowed in full, is not evidence of animus.

[3] At worst, Hagerty testified that on occasion, the time taken off by Archambault disrupted patient care. [ECF No. 48-15 at 9]. Although Archambault claim that she "felt a change in the work environment and people's attitudes toward her" after she renewed her FMLA eligibility in 2011, she only offers subjective impressions and speculation in support. Plaintiffs Facts ¶ 16; see Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 460 (1st Cir. 2016) ("[A] party cannot ward off summary judgment with proffers that depend . . . on arrant speculation, optimistic surmise, or farfetched inference.") (internal quotations omitted).

time off for FMLA leave. [ECF No. 48-19 at 30:2-9]; see Alvarado v. Donahue, 687 F.3d 453, 459 (1st Cir. 2012) "([I]f a supervisor or other employee is unaware of the fact that a plaintiff engaged in protected conduct, any actions attributable to [that supervisor] could not plausibly have been induced by retaliatory motives.").

Archambault identifies a single statement by her former supervisor, Patricia Cincotta, which Archambault heard second-hand in 2011, as proof of retaliatory animus. [ECF No. 48 at 4]. Archambault testified that physical therapist Alexis Silvestrio, a contractor, told her that Sue Houlihan, a Kindred manager at the time, had been told by Cincotta that "they were going to try to get rid of me because of FMLA." [ECF No. 48-10 at 9:20-10:6]. Setting aside that this is inadmissible hearsay, Cincotta did not play any role in Archambault's termination and Archambault testified that she had no interactions with Cincotta after March 2011, when Hagerty took over as supervisor. [ECF No. 48-9 at 73; No. 48-11 at 210:10-23].

Moreover, there is no evidence that comparably situated employees were treated differently from Archambault. While Archambault claims that missing documentation was a pervasive problem at Kindred, and that she was singled out [ECF No. 47 at 4], she admitted that she was in violation of Kindred's documentation policy at the time she was suspended [ECF No. 48-13 at 107-109], and she offers no examples of similarly situated employees who were treated differently. [ECF No. 48-10 at 148:22-149:1]. Her supervisor, Haggerty, testified that other therapists had lapses in their documentation, but none to the same extent as Archambault, who was missing five weeks of notes for 13 patients. [ECF No. 48-15 at 104:2-21].

Archambault also claims that the timing of her suspension and termination gives rise to an inference of pretext, since she took two days of FMLA leave immediately before being suspended. In certain instances, "protected conduct closely followed by adverse action may

justify an inference of retaliatory motive." Hodgens, 144 F.3d at 168. "Temporal proximity alone

can be sufficient to establish pretext, but only where it is strongly suggestive of retaliation."

Katica v. Webster Bank, N.A., No. 13-cv-30072, 2014 WL 3587383, at *12 (D. Mass. July 18,

2014) (citing Henry, 686 F.3d 50, 57 (1st Cir. 2012)). Given the surrounding facts, the timing of

Archambault's suspension does not raise an inference of retaliatory animus. First, Archambault

had been taking intermittent FMLA leave for at least three years before her suspension. Def.

Facts ¶ 15. Furthermore, Haggerty first raised concerns about Archambault's documentation

problems in October, before she had taken her two days of leave, and Esdale expressed concerns

over Archambault's billing without even knowing that she had ever taken FMLA leave. [ECF

No. 48-15 at 44:2-8; 48-19 at 30:2-9]. Without any additional evidence of pretext, such as the

contemporaneous statement of a decisionmaker, the fact that Archambault went on leave for two

days before being suspended is by itself insufficient to create a triable issue on pretext.

Archambault also attempts to identify an alleged pattern of retaliatory conduct, based on

various workplace incidents that occurred during the last several years of her employment.

Plaintiff has failed to show that these discrete events were motivated by Plaintiff's use of FMLA

leave. For each incident, the defendants have identified a non-retaliatory reason for their conduct,

which Archambault does not rebut. For instance, Archambault describes a July 18, 2012 meeting

in which she was "interrogated and accused by her superiors in a very threatening manner."

Plaintiff Facts ¶ 20. She does not link this incident to her use of FMLA leave, and this incident

did not result in any discipline or adverse action. Id.; Def. Facts ¶ 21. Moreover, she does not

dispute Defendants' version of events—that the meeting arose because of reports that

Archambault had told the daughter of a NWCAC resident that she did not trust the certified

nursing assistants to feed the residents. Plaintiff Facts ¶ 20. Archambault also describes a May

2012 incident in which she was reprimanded for talking to co-workers about a potential sale of

the facility. Plaintiff Facts ¶ 21. Again, Archambault does not dispute this story, nor allege that

the reprimand was linked to her taking of leave. Id.; Def. Facts ¶ 19. Archambault also references

her February 2011 suspension, which followed charges that she made a racial slur and insulted

the maintenance director. Plaintiff Facts ¶ 14; Def. Facts ¶ 20. Archambault was subsequently

reinstated and paid in full for the time that she missed following an investigation into the

incident, and she has not presented evidence that her taking of FMLA leave had any connection

to the suspension. Id. The internal documentation for these incidents is consistent with

defendants' version of events and not supportive of Plaintiff's claim that defendants' conduct

was somehow in retaliation for her exercise of FMLA rights. [ECF No. 48-14 at 25 (Ex. 8), 27

(Ex. 9)].

Lastly, the affidavit and deposition testimony of Suzanne Houlihan, submitted by

Archambault after the summary judgment motion was briefed, does not create a triable issue as

to pretext. Houlihan, who was Archambault's supervisor from January 2008 through December

2010, stated in her affidavit that after Archambault started complaining about smells in the

facility, defendants Morrison and Cincotta "made her write Gayle up for every little thing that

happened" and that they "were counting down to the final warning when they could terminate

Gayle." [ECF No. 56-1 ¶ 5]. Houlihan's deposition testimony undermines her credibility. She

claimed in her affidavit that she was continually forced to write up Archambault, but during her

deposition, she testified that she only wrote up Archambault twice. Furthermore, both times,

there was a legitimate reason to do so. Houlihan acknowledged that the first "write-up," from

February 2009 (almost a year before Archambault applied for FMLA), arose after the Executive

Director of the NWCAC facility complained to her that Archambault had confronted him

unprofessionally, and Houlihan agreed that the complained of conduct (ignoring the chain of command) was inappropriate. [ECF No. 64-1 at 19:22-20:11; 68:7-22]. The second "write-up," from January 2010, arose after a nurse at the facility complained to Houlihan that Archambault had acted unprofessionally and divulged patient information, in potential violation of HIPAA. [ECF No. 64-1 at 33:1-20]. Houlihan stated that she had no reason to believe that the nurse had fabricated her story, and agreed that Archambault could have handled the situation better. [ECF No. 61-1 at 71:15-72:7; 77:5-9]. Most importantly, neither write-up had any consequences for Archambault and neither factored into Archambault's eventual suspension and termination, which took place over three years later.

In sum, Archambault "does no more than raise tenuous insinuations on the facts surrounding her termination and the [defendants'] reason for taking that action. This is insufficient to create a triable issue on discriminatory or retaliatory animus." Henry, 686 F.3d at 58 (citing Roman v. Potter, 604 F.3d 34, 40 (1st Cir. 2010)). Archambault has not raised a genuine issue of fact as to whether her termination, or the incidents that preceded it, were motivated by retaliatory animus, and accordingly, the defendants are entitled to summary judgment on Count I.

> **b.      Counts II & III: Americans with Disabilities Act & Mass. Gen. L. Ch. 151B**

Archambault also brings claims under the ADA and Chapter 151B, alleging that the same acts underlying her FMLA claim were adverse actions taken against her because of her actual and/or perceived disability.[4] Compl. ¶¶ 33-42. Plaintiff's disability discrimination claims are based upon the same medical condition, events, and allegations as her FMLA retaliation claim.

_____

[4] "[T]he ADA uses the term 'disability,' and Chapter 151B uses the term 'handicap.'" Faiola v. APCO Graphics, Inc., 629 F.3d 43, 47 n. 2 (1st Cir. 2010).

Plaintiff asserts that her sensitivity to cleaning fluids constituted both a "serious health condition" under the FMLA, and a disability under the ADA and Chapter 151B. Plaintiff's ADA and Chapter 151B claims fail for the same reasons as her FMLA claim. Archambault has not sufficiently demonstrated, for purposes of a motion for summary judgment, that Kindred's stated reason for terminating her or taking other adverse actions against her was a pretext for her asserted disability. See Hodgens, 144 F.3d at 172 (affirming summary judgment on plaintiff's disability claim when there was insufficient evidence to warrant a finding of pretext on plaintiff's FMLA retaliation claim). Archambault cannot defeat summary judgment simply by arguing that the defendants disliked her or treated her unfairly; she must, and has not, linked defendants' conduct to her disability. See Sabinson v. Trustees of Dartmouth Coll., 542 F.3d 1, 4 (1st Cir. 2008) ("Whether or not personal or professional hostility played a role in the assessment, federal law does not protect generally against arbitrary or unfair treatment in private employment, but only against actions motivated by listed prejudices . . . .").

### c.      Count V: Intentional Infliction of Emotional Distress

Lastly, the individual defendants have moved for summary judgment on Archambault's claim for intentional infliction of emotional distress ("IIED"). They contend that her claim is barred by the Massachusetts Worker's Compensation Act, Mass. Gen. L. Ch. 152 § 24, under which "[a]n employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter." This exclusivity provision "bars claims against co-workers for the commission of an intentional tort 'if committed within the course of the workers' employment and in furtherance of the employer's interest.'" McArdle v. Town of Dracut/Dracut Pub. Sch., 909 F. Supp. 2d 48, 58-59 (D. Mass. 2012), aff'd, 732 F.3d 29 (1st Cir. 2013) (citing McCarty v. Verizon New England,

Inc., 731 F.Supp.2d 123, 131 (D. Mass.2010)). "Massachusetts courts construe this provision broadly, and the waiver covers intentional and negligent infliction of emotional distress." Andresen v. Diorio, 349 F.3d 8, 16 (1st Cir. 2003). Accordingly, Archambault's claims against her co-workers for intentional infliction of emotional distress are barred by the exclusivity provision of the workers' compensation act.

Archambault contends that the exclusivity provision does not apply to Esdale, since he technically did not work for the same employer as Archambault. Even if this is true, Archambault's claim still fails because the complained-of conduct, with respect to Esdale as well as the other individual defendants, does not rise to the level of "extreme and outrageous" conduct required to recover for IIED. See, e.g., Hankey v. Town of Concord-Carlisle, 136 F. Supp. 3d 52, 74 (D. Mass. 2015) ("To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish that the defendants' conduct was 'extreme and outrageous.' Extreme and outrageous conduct is behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (internal quotations and citation omitted). Accordingly, all of the individual defendants are entitled to summary judgment on Count V.

## IV.   CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is <u>GRANTED</u> in its entirety, and the Complaint is dismissed.

**So Ordered.**

Date: August 31, 2016

/s/ Allison D. Burroughs
ALLISON BURROUGHS
U.S. DISTRICT COURT JUDGE

16